## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF INDIANA
## INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| SHEMECA YOUNG, RACQUEL YOUNG, and K.W. by Next Friend, SHEMECA YOUNG, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case No. 1:16-cv-03395-TWP-DML |
| RICHARD SMITH Deputy Constable, in his individual capacity, LAURA B. CONWAY, MAIN STREET RENEWAL, LLC, NICK'S PACKING SERVICES, INC., and CRAIG HUFF, | ) ) ) ) ) ) ) | |
| Defendants. | ) | |

## ENTRY ON MOTIONS TO DISMISS

This matter is before the Court on Motions to Dismiss filed by each of the Defendants Deputy Constable Richard Smith ("Deputy Smith") (Filing No. 68), Laura B. Conway (Filing No. 38), Main Street Renewal, LLC ("Main Street") (Filing No. 35), Nick's Packing Services, Inc. ("Nick's Packing") and Craig Huff ("Huff") (Filing No. 42). After being forcibly removed from their leased residence, Plaintiffs Shemeca Young ("Shemeca"), Racquel Young ("Racquel"), and K.W. (collectively, "Plaintiffs") filed an Amended Complaint asserting federal claims under 42 U.S.C. § 1983 and the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq*. ("FDCPA"), as well as Indiana state law claims for statutory deception and civil conversion. (Filing No. 28.) Each of the Defendants' filed Motions to Dismiss arguing that this Court lacks jurisdiction over Plaintiffs' Amended Complaint pursuant to the *Rooker-Feldman* doctrine, and that the Amended Complaint fails to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)"). For the reasons stated below, the Motions are **granted in part and denied in part**.

# I.  BACKGROUND

The following facts are not necessarily objectively true.  But as required when reviewing a motion to dismiss, the Court accepts as true all factual allegations in the Amended Complaint and draws all reasonable inferences in favor of Plaintiffs as the non-moving parties.  *See Bielanski v. County of Kane*, 550 F.3d 632, 633 (7th Cir. 2008).

In March 2015, Shemeca signed a lease to occupy the real estate located at 8136 Carina Drive, Indianapolis, Indiana ("the Residence").  ([Filing No. 28 at 2](#).)  Shemeca leased the Residence from its owners Dennis and Katherine Young (collectively, "the Youngs"), who are not related to any of the Plaintiffs despite their common surname.  (*Id* at 3.)  Shemeca moved into the Residence with her minor son, K.W, and made monthly lease payments to the Youngs in the amount of $1,250.00.  (*Id.*)  She invited her sister Racquel to live at the Residence.  (*Id.*)  Racquel suffers from a serious medical condition that requires daily kidney dialysis, therefore, she kept special medical equipment at the Residence to perform her daily kidney dialysis.  (*Id.*)

In late 2014, the Residence became part of a foreclosure action against the Youngs.  ([Filing No. 28 at 3](#).)  The Plaintiffs were unaware of the foreclosure status and continued to make monthly lease payments to the Youngs.  Shemeca received "court papers" addressed to the Youngs and left on the Residence's door, but she forwarded the documents to the Youngs without reading them. (*Id.*)  The foreclosure action did not name any of the Plaintiffs.  (*Id.*)

A Decree of Foreclosure was eventually entered against the Residence.  ([Filing No. 28 at 4](#).)  On June 21, 2016, Jeff 1, LLC, purchased the Residence at a sheriff's sale.  At the time of the purchase, Main Street provided property management services for Jeff 1, LLC.  (*Id.*)

On or about August 2, 2016, Laura Conway ("Conway"), an attorney who acted on behalf of Main Street, filed a "Notice of Claim for Possession of Real Estate" ("Eviction Notice") in the

Pike Township of Marion County Small Claims Court.  (Filing No. 28 at 4.)  In the Eviction Notice, Conway states that she is a "debt collector" and provides other language from the FDCPA.  The Eviction Notice names the defendants as "Dennis P. Young, Katherine L. Young, and all unknown occupants."  (*Id*.)  The Eviction Notice contains a written statement indicating to the court that the Plaintiffs "unlawfully hold over and detain possession of [the Residence] from the Plaintiff to its damage in the sum of no less than $1.00."  (*Id*.)

On August 30, 2016, a hearing took place on the Eviction Notice.  (Filing No. 28 at 4.) Following the hearing, a writ ("the Writ") was issued, which listed in the field for the defendants: "DENNIS P. YOUNG AND KATHERINE L. YOUNG & A."  (Filing No. 28 at 4-5.)  Conway presented the Writ to the Constable of Pike Township, along with payment, and requested the Constable to execute the Writ.  (Filing No. 28 at 5.)  The Writ is reproduced below.

**** THIS IS AN ATTEMPT TO COLLECT A DEBT. ANY
INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.
THIS IS COMMUNICATION FROM A DEBT COLLECTOR.

**WRIT OF RESTITUTION**

STATE OF INDIANA  
COUNTY OF MARION, SS:

MARION COUNTY SMALL CLAIMS COURT  
PIKE TOWNSHIP DIVISION  
5665 LAFAYETTE ROAD / SUITE B  
INDIANAPOLIS, IN 46254  
　　　　　　　　　　　(317) 293-1842

JEFF 1, LLC BY MAIN ST. RENEWAL, LLC  
151 N DELAWARE ST., STE. 1900  
INDIANAPOLIS, IN 46204  
Plaintiff  
　　　　　　-VS-  
DENNIS P YOUNG AND KATHERINE L YOUNG & A  
8136 CARINA DRIVE  
INDIANAPOLIS, IN 46268  
Defendant

Cause No. **49K05 1608 SC 2981**

TO ANY CONSTABLE OF PIKE TOWNSHIP:  
You are commanded forthwith to put plaintiff, **JEFF 1, LLC BY MAIN ST. RENEWAL, LLC**  
in possession of property located at **8136 CARINA DRIVE**  
in said county, by removing therefrom the Defendant, **DENNIS P YOUNG AND KATHERINE L**  
and removing the goods of said defendant, by placing said goods in storage and to  
levy on any non-exempt property, by sale thereof you make the sum of **$0.00**  
together with costs and accruing interest from the **30** day of **AUGUST 2016**  
for which the said plaintiff has a judgement against said defendant as appears of  
record on the docket of this court, and of this writ of make legal service and return.

Dated this **30** day of **AUGUST 2016**　　　　　.

Damage Hearing: 10 Nov 2016 @09:00AM

JUDGE　　SEAL

Attorney for Plaintiff  
LAURA CONWAY, ATTY.  
151 N. DELAWARE ST. # 190

*SERVE TO:*

DENNIS P YOUNG AND KATHERINE L YOUNG & A  
8136 CARINA DRIVE  
INDIANAPOLIS, IN 46268

**N O T I C E   T O   M O V E**  
THIS PROPERTY MUST BE VACATED  
ON OR BEFORE 8:00 A.M. ON THE  
05 SEPTEMBER 2016 , OR THE  
CONTENTS WILL BE *REMOVED* AND  
PLACED IN STORAGE AT DEFENDANT'S  
COST.

Service of Writ. On the 29 day of Sept . 2016  
I served this  
writ by:　　　The goods of the within named Defendant were

Reading in person were removed and placed in storage at _____  
to deft.　( )

Leaving copy ( )　Nick Packing  
　　　　　　(X) 9-29-16

Constable Fees : _____　Constable: _____

2 STORY, TAN over Red Brick, Red Dr

(Filing No. 69-2.) [1]

---

[1] Deputy Smith filed several documents in conjunction with his Brief in Support of Motion to Dismiss. (Filing No. 69.) The Seventh Circuit has taken "a relatively expansive view of the documents that a district court properly may consider in disposing of a motion to dismiss." *Williamson v. Curran*, 714 F.3d 432, 443 (7th Cir. 2013). "A motion under Rule 12(b)(6) can be based only on the complaint itself, documents attached to the complaint, documents that are critical to the complaint and referred to in it, and information that is subject to proper judicial notice." *Geinosky v. City of Chicago*, 675 F.3d 743, 745 n. 1 (7th Cir. 2012). Because Deputy Smith's filings fall within these guidelines, the Court has considered them to decide these Motions.

On September 29, 2016, at approximately 10:00 a.m., Shemeca and K.W. were at the Residence when Conway and Deputy Smith, a duly appointed deputy of the Pike Township Constable's Office, knocked on the door. (Filing No. 28 at 1, 5.) Shemeca answered the door and Deputy Smith asked if she was the person named on the Writ, to which she told the deputy that the individuals were her landlords. (Filing No. 28 at 5.) Deputy Smith entered the residence, drew his firearm, and proceeded upstairs where then four (4) year-old K.W. was located. (*Id.*) Deputy Smith entered K.W.'s bedroom, pointed his firearm at K.W., and then ordered K.W. and Shemeca to leave the Residence. (Filing No. 28 at 6.)

Deputy Smith then allowed employees or agents of Nick's Packing to enter the Residence. (Filing No. 28 at 6.) Although Racquel was not present, Shemeca informed Deputy Smith and the agents of Nick's Packing that Racquel needed the dialysis machine and the accompanying supplies necessary for its operation, but she was not allowed to retrieve these items. Shemeca obtained a document titled "Inventory of Personal Property Removed Pursuant to Court Order" ("Inventory"), which lists the items removed from the Residence. (*Id*). Huff, who is employed by Nick's Packing, signed the Inventory. (Filing No. 28 at 1, 6.)

When Shemeca went to Nick's Packing on October 5, 2016, she was provided a written statement indicating that she had incurred $3,075.88 in storage fees in six (6) days. (Filing No. 28 at 6.) Moreover, Nick's Packing refused to release any of the items on the Inventory to the Plaintiffs, regardless of payment, because Conway and Main Street informed Nick's Packing that the items belonged to the Youngs. (Filing No. 28 at 6.)

Plaintiffs have asserted five separate causes of action in their Amended Complaint. Plaintiffs' fourth and fifth causes of action, however, both allege violations of the FDCPA. The Court provides a summary of each cause of action to facilitate its discussion on the merits.

**A.** **42 U.S.C. § 1983 – Deputy Smith and Conway**

Plaintiffs' first allegation is that Deputy Smith and Conway deprived them of "certain rights, privileges and immunities secured by the Constitution of the United States of America." (Filing No. 28 at 7.) Specifically, Plaintiffs claim that their right to be free from unreasonable seizure was violated by Deputy Smith and Conway's acts and/or omissions. Plaintiffs claim that Deputy Smith acted on specific directions prepared by Conway and therefore Conway acted as a "state actor" because of the "degree of her participation with Deputy Smith." (*Id.*)

**B.** **Statutory Deception – Nick's Packing**

Plaintiffs' second allegation is that Nick's Packing violated Indiana Code § 35-43-5-3(a)(2), which prohibits any person from "knowingly or intentionally mak[ing] a false or misleading written statement with intent to obtain property, employment, or an educational opportunity." (Filing No. 28 at 8.) Plaintiffs allege that Nick's Packing made a written statement that the Plaintiffs' property was being held in twelve (12) separate "vaults" at a price of $250.00 per "vault" and demanded payment of $3,000.00 for said "vaults." (*Id.* at 8.) Plaintiffs assert that, in reality, the property was being held at an off-site storage facility at a rate of $212.00 per month.

**C.** **Conversion – All Defendants**

Plaintiffs allege that all Defendants are responsible for the conversion of their property as the Writ did not authorize any Defendant to remove Plaintiffs' property from the Residence. (Filing No. 28 at 9.) Rather, Plaintiffs allege, the Writ specifically referenced "Dennis P. Young and Katherine L." (Filing No. 28 at 9.)

**D.** **Fair Debt Collection Practices Act – Conway**

Plaintiffs allege two causes of action against Conway under the FDCPA. First, they allege that Conway, as a debt collector, did not provide them adequate written notice under the FDCPA.

*See* 15 U.S.C. § 1692g.  (Filing No. 28 at 10-11.)   Plaintiffs also claim that Conway made a false representation and deceptive statement during the collection of the debt in stating that the Plaintiffs were in unlawful possession of the Residence.  (Filing No. 28 at 11-12.)

## II.  LEGAL STANDARD

### A.  Fed. R. Civ. Proc. 12(b)(1)

A motion to dismiss under Rule 12(b)(1) challenges the Court's subject matter jurisdiction. The burden of proof is on the Plaintiffs, the parties asserting jurisdiction.  *United Phosphorus Ltd. V. Angus Chem. Co.*, 322 F.3d 942, 946 (7th Cir. 2003), *overruled on other grounds by Minn-Chem, Inc. v. Agrium, Inc.*, 683 F.3d 845 (7th Cir. 2012) (*en banc*).  "The plaintiff has the burden of supporting the jurisdictional allegations of the complaint by competent proof."  *Int'l Harvester Co. v. Deere & Co.*, 623 F.2d 1207, 1210 (7th Cir. 1980).  In deciding whether a plaintiff has carried this burden, "the district court must accept as true all material allegations of the complaint, drawing all reasonable inferences therefrom in the plaintiff's favor, unless standing is challenged as a factual matter."  *Reid L. v. Ill State Bd. Of Educ.*, 358 F.3d 511, 515 (7th Cir. 2004). Furthermore, "[t]he district court may properly look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists."  *Ezekiel v. Michel*, 66 F.3d 894, 897 (7th Cir. 1995) (citation and quotation marks omitted).

### B.  Fed. Rule Civ. Proc. 12(b)(6)

Rule 12(b)(6) allows a defendant to move to dismiss a complaint that has failed to "state a claim upon which relief can be granted."  When deciding a motion to dismiss under Rule 12(b)(6), the Court accepts as true all factual allegations in the relevant complaint and draws all reasonable inferences in favor of the plaintiff.  *See Bielanski*, 550 F.3d at 633 (7th Cir. 2008).  However,

courts "are not obliged to accept as true legal conclusions or unsupported conclusions of fact." *Hickey v. O'Bannon*, 287 F.3d 656, 658 (7th Cir. 2002).

The complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Rule 8(a)(2). In *Bell Atlantic Corp. v. Twombly*, the Supreme Court explained that the complaint must allege facts that are "enough to raise a right to relief above the speculative level." 550 U.S. 544, 555 (2007). Although "detailed factual allegations" are not required, mere "labels," "conclusions," or "formulaic recitation[s] of the elements of a cause of action" are insufficient. *Id.; see also Bissessur v. Ind. Univ. Bd. of Trs.*, 581 F.3d 599, 603 (7th Cir. 2009) ("it is not enough to give a threadbare recitation of the elements of a claim without factual support"). The allegations must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555. Stated differently, the complaint must include "enough facts to state a claim to relief that is plausible on its face." *Hecker v. Deere & Co.*, 556 F.3d 575, 580 (7th Cir. 2009) (citation and quotation marks omitted). To be facially plausible, the complaint must allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

### III. DISCUSSION

Each of the Defendants allege that the *Rooker-Feldman* doctrine is applicable to all claims asserted by the Plaintiffs and therefore this Court lacks jurisdiction pursuant to Rule 12(b)(1). Further, each Defendant filed a Motion to Dismiss the claims asserted against it pursuant to Rule 12(b)(6) for a failure to state a claim. Because subject matter jurisdiction is critical to survival in federal court, the Court must first address the Rule 12(b)(1) motions.

**A.** **_Rooker-Feldman_**

The _Rooker-Feldman_ doctrine is the result of two decisions of the United States Supreme Court, _Rooker v. Fidelity Trust Co._, 263 U.S. 413 (1923), and _District of Columbia Court of Appeals v. Feldman_, 460 U.S. 462 (1983). The doctrine "precludes lower federal court jurisdiction over claims seeking review of state court judgments … [because] no matter how erroneous or unconstitutional the state court judgment may be, the Supreme Court of the United States is the only federal court that could have jurisdiction to review a state court judgment." _Brokaw v. Weaver_, 305 F.3d 660, 664 (7th Cir. 2002). "[I]f a claim is barred by the _Rooker-Feldman_ doctrine, the federal court lacks subject matter jurisdiction over the case." _Taylor v. Fed. Nat'l Mortg. Ass'n_, 374 F.3d 529, 532 (7th Cir. 2004).

In determining the applicability of the doctrine, "the fundamental and appropriate question is to ask whether the injury alleged by the federal plaintiff resulted from the state court judgment itself or is distinct from that judgment." _Garry v. Geils_, 82 F.3d 1362, 1365 (7th Cir. 1996). "If the claim alleges an injury independent of the state-court judgment that the state court failed to remedy, _Rooker-Feldman_ does not apply." _Mains v. Citibank, N.A._, 852 F.3d 669, 675 (7th Cir. 2017). "Notably, the _Rooker-Feldman_ doctrine is a narrow one." _Jakupovic v. Curran_, 850 F.3d 898, 902 (7th Cir. 2017). The doctrine "is confined to the cases of the kind from which the doctrine acquired its name: cases brought by state-court losers … inviting district court review and rejection of [those state court's] judgments." _Exxon-Mobil v. Saudi Basic Indus. Corp._, 544 U.S. 280, 293 (2005). In order for the doctrine to apply, "there must be no way for the injury complained of by a plaintiff to be separated from a state court judgment." _Sykes v. Cook Cnty. Cir. Ct. Prob. Div._, 837 F.3d 736, 742 (7th Cir. 2016). "But if the suit does not seek to vacate the judgment of the

state court and instead seeks damages for independently unlawful conduct, it is not barred by *Rooker-Feldman*." *Mains*, 852 F.3d at 675.

The Defendants assert that Plaintiffs' Amended Complaint seeks recovery for the result of a state court adjudication, namely the small claims court Writ, and therefore the eviction and any injury resulting therefrom are "inextricably intertwined" and barred by the *Rooker-Feldman* doctrine. Indeed, "[i]n order for the doctrine to apply, the state court judgment must be 'inextricably intertwined' with the federal court lawsuit. In other words, there must be no way for the injury complained of by a plaintiff to be separated from a state court judgment." *Sykes*, 837 F.3d at 742. Defendants claim that all injuries Plaintiffs allege in the Amended Complaint derive from the issuance of the Writ and there is no way to separate the injury suffered by the Plaintiffs from the state court judgment. *See id.*

In this matter, however, Plaintiffs were never made a party to the state court litigation against the Youngs. Thus, Plaintiffs could not be considered "state-court losers" that are simply "complaining of injuries caused by state-court judgments." *Exxon-Mobil*, 544 at 281. The Supreme Court has cautioned against a broad reading of the *Rooker-Feldman* doctrine and disapproved of its application "where the party against whom the doctrine is invoked was not a party to the underlying state-court proceeding." *Lance v. Dennis*, 546 U.S 459, 464 (2006).

In the instant case, the Plaintiffs were not named parties to the Writ or any of the proceedings leading up to its issuance. The foreclosure action only named the Youngs as Defendants. (Filing No. 69-1.) Similarly, and perhaps more telling, the Writ commands removal of "**DENNIS P YOUNG AND KATHERINE L**." (Filing No. 69-2.) The "Notice to Move" contained on the same document, which indicates when the Residence is to be vacated, is served to "DENNIS P YOUNG AND KATHERINE L YOUNG & A" and lists the address of the

Residence.  (Filing No. 69-2.)  The Amended Complaint specifically addresses "court papers" that were left at the Residence, but also states that all of the papers were addressed to the Youngs and that Shemeca simply forwarded the documents to the Youngs.  (Filing No. 28 at 3.)  Simply put, there is no evidence that the Plaintiffs were defendants in the state court proceedings much less any showing that the Plaintiffs are "state-court losers" inviting this Court's review and rejection of a state-court judgment.  *Exxon-Mobil*, 544 U.S. at 293.

Accordingly, because none of the Plaintiffs were parties in the prior state court proceedings, the *Rooker-Feldman* doctrine is inapplicable.

**B.**     **42 U.S.C. § 1983**

In pursuing their claims against Conway and Deputy Smith, Plaintiffs allege that both were state actors when they unreasonably seized their property during the execution of the Writ.  (Filing No. 28 at 7.)  Claims pursued "under § 1983 are meant to deter state actors from using the 'color of state law' to deprive individuals of rights guaranteed by the Constitution."  *Tom Beu Xiong v. Fischer*, 787 F.3d 689, 697 (7th Cir. 2015).  To bring a claim under § 1983, the plaintiff must show that: "(1) the party against whom the claim is brought qualifies as a person acting under the color of state law; and (2) the conduct alleged amounted to a deprivation of rights, privileges, or immunities under the Constitution or the laws of the United States."  *Id.* (internal quotation marks and citation omitted).  "For an individual to act under color of law, there must be evidence of a *concerted effort* between a state actor and that individual."  *Fries v. Helsper*, 146 F.3d 452, 457 (7th Cir. 1998) (emphasis by the Seventh Circuit).  This showing of a "conspiracy theory" requires a plaintiff to show that: "(1) a state official and private individual(s) reached an understanding to deprive the plaintiff of his constitutional rights; and (2) those individual(s) were willful participants in joint activity with the State or its agents."  *Id.* (internal quotation marks and citations omitted).

1. **Conway**

Conway argues that Plaintiffs have failed to set forth facts to demonstrate that she acted under the color state law and therefore the § 1983 claim against her should be dismissed under Rule 12(b)(6). In Plaintiffs' Amended Complaint, they assert that "Conway was a 'state actor' given the degree of her participation with Deputy Smith in the constitutional deprivations complained of herein." (Filing No. 28 at 7.) Plaintiffs also allege that "Deputy Smith was acting pursuant to specific directions prepared by and caused to be prepared by [Conway]." (*Id.*) Conway asserts that this conclusory allegation is insufficient to state a claim and does nothing more than establish that she represented her client in the eviction proceedings. Plaintiffs' only response is that Conway's choice to accompany Deputy Smith during the execution of the Writ demonstrates that she acted in concert with him and therefore qualifies her as a state actor.

Simply alleging that Conway was present during the execution of the Writ, and nothing more, does not render her a "willful participant" in conjunction with Deputy Smith. Indeed, "mere allegations of joint action or a conspiracy do not demonstrate that the defendants acted under color of state law and are not sufficient to survive a motion to dismiss." *Helsper*, 146 F.3d at 458. The simple fact that Conway accompanied Deputy Smith to execute the Writ is not evidence that the two made a "concerted" effort to deprive the Plaintiffs of a constitutional right. *See id.* at 457. Similarly, the fact that Conway performed legal work that resulted in the issuance of the Writ here does not establish that she acted under the color of law or in concert with a state actor, but rather, she acted on behalf of her client. Therefore, Plaintiffs have failed to plead facts to show that Conway acted under color of state law and their § 1983 claim against her must fail.

## 2. **Deputy Smith**

Plaintiffs allege that Deputy Smith violated their rights on three separate occasions: (1) by unreasonably pointing a gun at K.W. during the execution of the Writ; (2) seizing Racquel's necessary medical equipment; and (3) seizing property from the Plaintiffs although the Writ did not name them as a party. (Filing No. 74 at 7-11.) Although Plaintiffs have labeled a single cause of action for a "deprivation of civil rights" under 42 U.S.C. § 1983 (Filing No. 28 at 7-8), they essentially assert two separate causes of action for (1) unreasonable seizure and (2) excessive force. Deputy Smith asserts that Plaintiffs are barred from bringing these claims against him under the doctrine of qualified immunity.

"The doctrine of qualified immunity protects government officials from liability for civil damages when their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Rabin v. Flynn*, 725 F.3d 628, 632 (7th Cir. 2013) (citation and quotation marks omitted). Qualified immunity protects government officials from liability "when they act in a manner that they reasonably believe to be lawful." *Gonzalez v. City of Elgin*, 578 F.3d 526, 540 (7th Cir. 2009). In other words, government officials performing discretionary functions are entitled to qualified immunity if their conduct could reasonably have been thought consistent with the rights they are alleged to have violated. *See Borello v. Allison*, 446 F.3d 742, 746 (7th Cir. 2006). This ensures that government officials receive reasonable notice that "certain conduct violates constitutional rights before a plaintiff can subject them to liability." *Narducci v. Moore*, 572 F.3d 313, 318 (7th Cir. 2009).

"To determine whether a defendant is entitled to qualified immunity, courts must address two issues: (1) whether the defendant violated the plaintiff's constitutional rights and (2) whether the right at issue was clearly established that the time of the violation." *Rooni v. Biser*, 742 F.3d

737, 742 (7th Cir. 2014). Plaintiffs bear "the burden of demonstrating the violation of a clearly established right." *Purtell v. Mason*, 527 F.3d 615, 622 (7th Cir. 2008).

### a. **Excessive Force**

With respect to Plaintiffs' allegation that Deputy Smith violated their constitutional rights by using excessive force during the execution of the Writ, it is well-established that "the Fourth Amendment prohibits the use of excessive force during the execution of a seizure." *Jacobs v. City of Chicago*, 215 F.3d 758, 773 (7th Cir. 2000). To determine excessiveness, the Court must "examine the totality of the circumstances to determine whether the intrusion on the citizen's Fourth Amendment interests was justified by the countervailing government interests at stake." *Id*. The inquiry as to "whether the seizure was unreasonable under the Fourth Amendment depends on whether it was objectively reasonable, judged from the perspective of a reasonable officer on the scene." *Baird v. Renbarger*, 576 F.3d 340, 344 (7th Cir. 2009). In performing this analysis, the Court must consider the facts and circumstances of the case, "including [1] the severity of the crime at issue, [2] whether the suspect poses an immediate threat to the safety of the officers or others, and [3] whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham v. Connor*, 490 U.S. 386, 396 (1990). "Plaintiffs need not show physical injury in order to sustain an excessive force claim." *Baird*, 576 F.3d at 344.

According to the allegations in the Amended Complaint, Deputy Smith, upon entering the Residence, "drew his firearm, and proceeded upstairs where then four (4) year-old K.W. was located." (Filing No. 28 at 5.) Shemeca informed Deputy Smith that K.W. was the only other occupant at the Residence. "Deputy Smith entered K.W.'s bedroom and pointed his firearm at the child and ordered both parties to leave the home." (Filing No. 28 at 6.)

Applying the three factors identified in *Graham* demonstrate that Deputy Smith's actions were objectively unreasonable under the circumstances alleged. Deputy Smith was merely serving an eviction notice and there was no instant crime necessitating the use of a firearm. Moreover, nothing in the allegations of the Amended Complaint or the Writ would suggest that K.W. or Shemeca posed any sort of threat to Deputy Smith's safety. Simply put, there was no reason on the face of the Amended Complaint or the documents submitted by Deputy Smith to demonstrate that drawing a firearm during the execution of this Writ was an objectively reasonable decision.

Having found that Plaintiffs pleaded a possible violation of their constitutional rights, the Court must now turn to whether the right was clearly established at the time Deputy Smith executed the Writ. Plaintiffs rely on *Jacobs v. City of Chicago* wherein the Seventh Circuit held that an officer pointing a gun at an elderly man's head for ten minutes, despite having ascertained that the man was not the person he was looking for and during which time the man did nothing to elicit such a grave response, was objectively unreasonable. 215 F.3d at 773-74. Defendants contend that *Jacobs* requires that the loaded weapon be pointed at people "for extended periods of time," but such "detailed factual allegations" are not required at this stage in the litigation. *Iqbal*, 556 U.S. at 678 (citing Rule 8). But nothing in the *Jacobs* opinion sets forth a requirement establishing any duration of time. (Filing No. 78.) The *Jacobs* court found that, considering all facts as true, the officer's "use of force against Jacobs while executing an allegedly illegal search of his home and an allegedly unlawful seizure of his person was out of proportion to any danger Jacobs could possibly have posed to the officers or any other member of the community." *Id*. at 745. Here, the Amended Complaint does not indicate the amount of time that Deputy Smith pointed his weapon at K.W, but even under *Jacobs*, accepting the facts as pleaded in the Amended Complaint, Deputy Smith's choice to pull his firearm and point it at K.W. appears to be disproportionate to the

potential dangers that a four-year-old might inflict during the service of a writ for eviction. Thus, at this stage in the litigation, Deputy Smith is not shielded by qualified immunity with respect to Plaintiffs' claim of excessive force under 42 U.S.C. § 1983.

**b.   Unreasonable Seizure**

Deputy Smith also asserts that qualified immunity protects him from Plaintiffs' unreasonable seizure claim. He argues that the legal authority cited by Plaintiffs, Indiana Code § 34-55-10-2(c) and *Deshaney v. Winnebago County Department of Social Services*, 489 U.S. 189 (1989), are not applicable to the instant case. Specifically, the regulation relates to state bankruptcy proceedings, and the Supreme Court case concerns rights of individuals in state institutions and the Eighth Amendment. Therefore, Deputy Smith contends, Plaintiffs have failed "to establish that he violated a clearly established statutory or constitutional right and, thus, are incapable of overcoming the Qualified Immunity Doctrine." (Filing No. 78 at 7.)

Although Plaintiffs' legal authority with respect to the seizure of Racquel's medical equipment is unrelated to the constitutional challenges at issue, Plaintiffs also cite the Fourth Amendment for legal authority (*see* Filing No. 74 at 9-11), which Deputy Smith ignores in his reply brief. Plaintiffs essentially argue that the Writ, which authorized Deputy Smith to seize property from the Youngs, was inapplicable to the Plaintiffs and therefore Deputy Smith's seizure of their property was unreasonable. It is a well-established "'basic principle of Fourth Amendment' law that searches and seizures inside a home without a warrant are presumptively unreasonable." *Groh v. Ramirez*, 540 U.S. 551, 559 (2004) (quoting *Payton v. New York*, 445 U.S. 573, 586 (1980)). Plaintiffs have adequately pleaded, in conjunction with the submitted documents, that the Writ authorized the removal of the Youngs and their property, not that of the Plaintiffs'. Accepting the facts in the Amended Complaint, Deputy Smith's actions in removing

the Plaintiffs' property, despite none of their names being listed on the Writ, was unreasonable; therefore, qualified immunity is not applicable to the § 1983 claims against him.

### c.    Quasi-Judicial Immunity

Deputy Smith also asserts that the quasi-judicial immunity defense bars Plaintiffs' claims against him.  "The absolute immunity afforded to judges has been extended to apply to 'quasi-judicial conduct' of 'non-judicial officials whose official duties have an integral relationship with the judicial process.'"  *Richman v. Sheahan*, 270 F.3d 430, 435 (7th Cir. 2001) (quoting *Henry v. Farmer City State Bank*, 808 F.2d 1228, 1238 (7th Cir. 1986)).  Non-judicial officers are entitled to immunity in one of two ways:  (1) when they are sued for engaging in functions similar to those of a judge, such as resolving disputes between parties or authoritatively adjudicating private rights; or (2) when they engage in a non-discretionary or administrative function at the explicit direction of a judicial officer.  *See Zoretic v. Darge*, 832 F.3d 639. 643-44 (7th Cir. 2016).  Here, Plaintiffs assert, and claim, that even though the Writ may have authorized the removal of both the person and the property of the Youngs from the Residence, it was not enforceable as to the Plaintiffs. Deputy Smith fails to dispute this fact.  Further, "where officers are not acting pursuant to an enforceable order, they cannot receive quasi-judicial immunity."  *Id*. at 644.  Accordingly, Deputy Smith is not entitled to quasi-judicial immunity.

## C.    Conversion

Plaintiffs have also brought a claim for conversion as to all of the Defendants.  Defendants Conway, Main Street, Nick's Packing, and Huff have moved to dismiss Plaintiffs' conversion claim pursuant to Rule 12(b)(6).[2]  Pursuant to Indiana statute, "A person who knowingly or

---

[2] Deputy Smith does not seek dismissal as to Plaintiffs' conversion claims.  Although Deputy Smith argues in both his initial and reply briefs that the Plaintiffs did not have a right to possess the Residence, he fails to present any argument that Plaintiffs' conversion claim against him should be dismissed.  (*See generally,* Filing No. 69 & Filing No. 78.)

intentionally exerts unauthorized control over property of another person commits criminal conversion." *JET Credit Union v. Loudermilk*, 879 N.E.2d 594, 597 (Ind. Ct. App. 2008) (citing Ind. Code § 35-43-4-3). Any person "who has suffered a pecuniary loss as a result of a criminal conversion may bring a civil action to recover the loss." *Id.* (citation omitted). The same elements apply to both criminal and civil conversion, only the burden of proof differs. *Id.* Thus, even in a civil action, "criminal intent is an essential element that must be proven." *Id.* (citation omitted). Generally, to prove conversion, a plaintiff must show that: (1) the defendant's control over the property was unauthorized; and (2) the defendant was aware of a high probability that the control was unauthorized. *See Manzon v. Stant Corp.*, 138 F. Supp. 2d 1110, 1115 (S.D. Ind. 2001) (citations omitted).

With respect to Nick's Packing and Huff, Plaintiffs have failed to allege any facts that either of these parties had the requisite *mens rea* to establish that they knew their control over the Plaintiffs' property was unauthorized. To establish criminal intent, "a plaintiff must how the defendant was aware of a high probability his control over the plaintiff's property was unauthorized." *Schrenker v. State*, 919 N.E.2d 1188, 1193-94 (Ind. Ct. App. 2010). Here, Plaintiffs have only alleged that Nick's Packing and Huff acted under the authority of Deputy Smith. Moreover, neither Nick's Packing or Huff are alleged to be aware that the Plaintiffs were not the individuals named on the Writ, because allegedly Shemeca only communicated this information to Deputy Smith. (Filing No. 28 at 5-6.) Simply removing the Plaintiffs' property from the Residence does not suffice to establish that either Nick's Packing or Huff were "aware of a high probability" that their control over Plaintiffs' property was unauthorized. *Schrenker*, 919 N.E.2d at 1193-94.

In regard to Main Street and Conway, Plaintiffs have also failed to allege that either of these Defendants exerted control or were aware of a high probability that control over Plaintiffs' property was unauthorized. Plaintiffs cite to the allegation in the Amended Complaint that Conway and Main Street "falsely informed Nick's Packing that the items removed from the [Residence] belong [sic] to the Young's [sic]." (Filing No. 28 at 6.) And while this might exhibit some degree of control, assuming that Conway and Main Street had authority over Nick's Packing and the property removed from the Residence, Plaintiffs do not allege that Conway or Main Street did so with a "high probability" that such information was false or made with the intent to deprive Plaintiffs of their property.

Plaintiffs also argue that Main Street and Conway pursued the Writ that led to the eviction and seizure of Plaintiffs' property and therefore are responsible under a theory of "accomplice liability." (*See* Filing No. 54 at 4-5 and Filing No. 56 at 6-7.) In the civil context, this principle is referred to as "civil conspiracy." And although there is no separate civil cause of action for conspiracy, "there is a civil cause of action for damages resulting from a conspiracy." *K.M.K. v. A.K.*, 908 N.E.2d 658, 665 (Ind. Ct. App. 2009), *reh'g denied, trans. denied*. Plaintiffs did not assert a civil conspiracy claim in their Amended Complaint and may not do so now. *See Agnew v. Nat'l Collegiate Athletic Ass'n*, 683 F.3d 328, 348 (7th Cir. 2012) (quoting *Thomason v. Nachtrieb*, 888 F.2d 1202, 1205 (7th Cir. 1989) ("[i]t is a basic principle that the complaint may not be amended by the briefs in opposition to a motion to dismiss"). Nonetheless, even if Plaintiffs had raised this claim in the Amended Complaint, they still have not established how Conway or Main Street were "aware of a high probability" that the seizure was unauthorized or that they exercised any control of their property. Conway pursued the Writ on Main Street's behalf, but that is where Conway's and Main Street's participation ceased, except for Conway's presence at the

execution of the Writ and the alleged statement to Nick's Packing with respect to the release of the property.

Although Conway was allegedly present during the removal of the property, according to the Amended Complaint, the only party who is alleged to have the requisite *mens rea* for conversion in this matter is Deputy Smith. Therefore, Plaintiffs' conversion claim as to Defendants Main Street, Conway, Nick's Packing, and Huff fails pursuant to Rule 12(b)(6).

## D. **Statutory Deception**

Plaintiffs also allege statutory deception against Nick's Packing pursuant to Ind. Code § 35-43-5-3(a)(2), which prohibits a person from "knowingly or intentionally mak[ing] a false or misleading written statement with intent to obtain property, employment, or an educational opportunity." Plaintiffs allege that Nick's Packing's written statement to Plaintiffs that their property was being held in various vaults and that they would have to pay $3,000.00 for its return constituted statutory deception because "[t]he truth is that the Plaintiffs' property was being held at an off-site storage facility at the rate of $212.00 per month." (Filing No. 28 at 8.) Although, pursuant to Rule 9(b) "malice, intent, knowledge, and other conditions of a person's mind may be alleged generally," Plaintiffs have failed to even generally allege that Nick's Packing "knowingly or intentionally" made the allegedly false statement. Ind. Code § 35-53-5-3(a)(2). Therefore, having failed to allege the requisite *mens rea* for the written statement by Nick's Packing, Plaintiffs' statutory deception claim must fail.

## E. **Fair Debt Collections Practices Act**

Finally, Plaintiffs assert two counts for violations of the FDCPA against Conway, alleging that she failed to adhere to the written notice requirements in the FDCPA and also alleging that

20

she made false and deceptive statements by indicating that the Plaintiffs were in unlawful possession of the Residence.  (Filing No. 28 at 10-12.)

The FDCPA, 15 U.S.C. § 1692 *et seq*., imposes various requirements on collectors of consumer debt and seeks to "eliminate abusive debt collection practices by debt collectors."  15 U.S.C. § 1692(e).  It also sets forth certain notice requirements that require "debt collectors to send consumers a written validation notice containing certain information within five days of the initial communication."  *Sims v. GC Servs. L.P.*, 445 F.3d 959, 962 (7th Cir. 2006).  This notice must comprise the following information: (1) amount of the debt, 15 U.S.C. § 1692g(a)(1); (2) the name of the creditor, 15 U.S.C. § 1692g (a)(2); and (3) a statement explaining that unless the debtor, within 30 days of receiving notice, "disputes the validity of the debt … the debt will be assumed to be valid by the debt collector."  15 U.S.C. § 1692g(a)(3).  Plaintiffs allege that these three statements were omitted by Conway who held herself out as a "debt collector" in pursuing the eviction action.  (Filing No. 28 at 4, 10-12.)  Plaintiffs also allege that Conway falsely represented that "Plaintiffs were not the rightful owners of the property seized from their possession."  (Filing No. 28 at 12.)  Finally, Plaintiffs allege that Conway violated 15 U.S.C. § 1692e(10), which prohibits a debt collector from using "any false representation or deceptive means to collect or attempt to collect any debt," by stating that Plaintiffs did not have an ownership in the property seized during the Writ.

The term "debt" is defined as an "obligation … of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduce to judgment."  15 U.S.C. § 1692a(5).  "Consumer" is defined as "any natural person obligated or allegedly obligated to pay any debt."  15 U.S.C. § 1692a(3).  The latter

definition is fatal to Plaintiffs' FDCPA claims because Plaintiffs have failed to allege any facts to establish that they owed a debt to Conway or any of Conway's clients. The Amended Complaint makes clear that the eviction action and foreclosure were sought against the Youngs. (Filing No. 28 at 4-5.) In fact, the crux of Plaintiffs' Amended Complaint surrounds the execution of the Writ and alleges that it was executed against the wrong party. Nowhere in the Amended Complaint do Plaintiffs claim to have a debt that Conway sought to collect; Conway solely pursued the Youngs as the owners of the Residence. The only allegation relating to money owed by the Plaintiffs is in the Eviction Notice informing the state court that the Plaintiffs "unlawfully hold over and detain possession of [the Residence] from the Plaintiff to its damage in the sum of no less than $1.00," a statement that the Amended Complaint specifically states is "false." (Filing No. 28 at 4.) Moreover, had Conway or her clients sought to collect a debt against the Plaintiffs in this matter they would have likely named the Plaintiffs in the state court action and the *Rooker-Feldman* doctrine would apply. The Amended Complaint, however, unequivocally states that the state court suit, and underlying debt, that led to the events giving rise to the suit were sought against the Youngs, not the Plaintiffs.

Accordingly, because Conway did not attempt to collect a "debt" against the Plaintiffs, Plaintiffs' FDCPA claims must fail as a matter of law.

## IV. CONCLUSION

For the foregoing reasons, the claims asserted in Plaintiffs' Amended Complaint against Main Street, Conway, Nick's Packing, and Craig Huff are hereby **DISMISSED WITHOUT PREJUDICE**. (Filing No. 35, Filing No. 38, Filing No. 42.) The Court **DENIES** Deputy Smith's Motion to Dismiss as to the claims asserted against him. (Filing No. 68.) Plaintiffs shall have **fourteen (14) days** from the date of this Entry to amend their Amended Complaint.

**SO ORDERED.**

Date: 8/17/2017

_(signature)_

TANYA WALTON PRATT, JUDGE
United States District Court
Southern District of Indiana

DISTRIBUTION:

Fred Anthony Paganelli
tony@tonypaganelli.com

Thomas David Perkins
FROST BROWN TODD LLC
tom@paganelligroup.com

Dina M. Cox
LEWIS WAGNER LLP
dcox@lewiswagner.com

Joseph Neal Bowling
LEWIS WAGNER LLP
nbowling@lewiswagner.com

Lee F. Baker
NATIONWIDE MUTUAL INSURANCE
COMPANY TRIAL DIVISION
bakeL5@nationwide.com

Raegan Mackenzie Gibson
PAGANELLI LAW GROUP
raegan@paganelligroup.com

Bradley C. Lohmeier
bradley.lohmeier@gmail.com

Kathryn Elizabeth Ransburg
RANSBURG LAW, LLC
ransburglaw@yahoo.com

David E. Miller
SAEED & LITTLE
david@sllawfirm.com

Stephen R. Donham
THRASHER BUSCHMANN & VOELKEL
donham@indiana-attorneys.com

Steven Christopher Earnhart
THRASHER BUSCHMANN GRIFFITH &
VOELKEL
earnhart@indiana-attorneys.com

Chad D. Wuertz
WUERTZ LAW OFFICE
chad@wuertzlaw.com